**UNITED STATES of America, Plaintiff–Appellee**

v.

**Alfonso Adalberto PUPO, Defendant–Appellant.**

**UNITED STATES of America, Plaintiff–Appellee,**

v.

**George GOVANTES, Defendant–Appellant.**

Nos. 86–5151, 86–5152.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 1, 1987.

Decided March 10, 1988.

Rehearing Denied in No. 86–5152 April 22, 1988.

Philip Steward Marstiller, Richmond, Va., (J. Jay Litten, Litten, Sipe and Miller, Harrisonburg, Va., Barbara J. Gaden, Jeffrey C. Southard, Hazel, Thomas, Fiske, Beckhorn & Hanes, P.C., Richmond, Va., on brief); Milton Gordon Widenhouse, Jr., Raleigh, N.C., Todd Clark Conormon, for defendants-appellants.

Sara Bradkin Criscitelli, Dept. of Justice, Washington, D.C., William Graham Otis, Asst. U.S. Atty., Alexandria, Va., (Samuel T. Currin, U.S. Atty., Raleigh, N.C., Henry E. Hudson, U.S. Atty., Alexandria, Va., on brief), for plaintiff-appellee.

Before WINTER, Chief Judge, and RUSSELL, WIDENER, HALL, PHILLIPS, MURNAGHAN, SPROUSE, ERVIN, CHAPMAN, WILKINSON and WILKINS, Circuit Judges, sitting en banc.

DONALD RUSSELL, Circuit Judge:

Appellants Pupo and Govantes were indicted for (I) conspiracy to possess cocaine with intent to distribute in violation of 21 U.S.C. § 846 (1982); (II) interstate travel in aid of a racketeering enterprise in violation of 18 U.S.C. § 1952(a) (1982); (III) possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1) (1982); and (IV) distribution of cocaine in violation of 21 U.S.C. § 841(a)(1) (1982). Pupo alone was also indicted for (V) use of a communications facility in furtherance of a narcotics offense in violation of 21 U.S.C. § 843(b) (1982). At the close of the government's case the court granted the defendants' motion for judgment of acquittal as to Count II. Pupo's objection, entered at that time, was that counts III and V of the indictment were invalid for failure to include an essential element of the crime charged. The omission was the failure to include a scienter allegation ("knowingly or intentionally"). In reaching its conclusion the district court relied on *United States v. Arteaga-Limones*, 529 F.2d 1183 (5th Cir.1976), *cert. denied*, 429 U.S. 920, 97 S.Ct. 315, 50 L.Ed. 2d 286 (1976). After submission to the jury, Govantes was later convicted on Count I and given a five-year sentence with immediate eligibility for parole. He was acquitted on Counts III and IV. Pupo was convicted on all four remaining charges. For Counts I, III, and IV he received twelve-year sentences to be served concurrently; for Count V he received a four-year sentence, also to be served concurrently.

The appellants appealed their convictions asserting numerous errors. We find no merit in any of the alleged claims of error with the exception of the contention of invalidity in Counts III and IV of the indictment. These cases were originally heard by a panel different from that in *United States v. Hooker*, 841 F.2d 1225, decided along with these cases but in a separate opinion. Because these cases and *Hooker* involved primarily the same dispositive legal issues, we consolidated the cases for hearing en banc, but we decide the cases in separate opinions, which are being filed simultaneously.

We accordingly reverse Pupo's convictions on Counts III and IV because the indictments were fatally defective and affirm all other objections.

## I.

Govantes individually contends that the evidence was insufficient to support his conviction for conspiracy to distribute cocaine. The evidence shows that on May 10, 1986, Govantes accompanied Pupo from Florida to North Carolina where they were met by Winford Grainger and Raymond Allen. When the four men arrived at Allen's auto shop, Govantes brought in a tote bag, and Pupo opened it. The bag contained a sizeable quantity of cocaine, which Allen tested in the presence of the others. Again in Govantes' presence the other three men discussed the purity of the cocaine. Allen then removed the cocaine from the office and returned with a small quantity, which all four men snorted. Govantes and Pupo then booked a nearby motel room in North Carolina where they remained for nearly three days. On May 13, 1986, Pupo received a telephone call at the motel from Allen during which Pupo and Allen discussed both the ongoing drug transaction and a possible future sale. During that conversation Allen said "George [Govantes] is going crazy, man."

■ Govantes argues that mere knowledge, acquiescence, or approval of a crime is not enough to establish that an individual is part of a conspiracy to distribute drugs. *See United States v. Manbeck,* 744 F.2d 360 (4th Cir.1984). Nor is mere presence at the scene of a distribution of drugs sufficient to prove participation in a conspiracy. *See United States v. Soto,* 716 F.2d 989 (2d Cir.1983). This statement of the law is, of course, correct. We cannot say, however, that a reasonable jury could not have concluded, from the evidence presented, that Govantes was a knowing participant in the conspiracy. He carried the tote bag containing the cocaine, and he remained in a motel room with Pupo for three days until Allen called to report that the transaction was complete. The jury could properly conclude that these actions were more consistent with participation than they were with mere acquiescence. The jury could further believe from Pupo's statement, "George is going crazy, man," that Govantes was a participant in the conspiracy.

Although the evidence of Govantes' participation in the conspiracy was not compelling, it was sufficient to support the verdict. We therefore affirm Govantes' conviction on Count I.

## II.

■ The attack on Counts III and IV by Pupo is more serious. Counts III and IV were single-paragraph counts charging possession with intent to distribute and actual distribution of cocaine.[1] A comparison between the elements of the offense shown in the indictment and the elements set out in the statute shows that both of these counts failed to allege, either expressly or through words of import, that the defendants acted "knowingly or intentionally."[2]

---

**1.**

**THIRD COUNT**

That on or about the 13th day of May, 1986, within the Eastern District of North Carolina and elsewhere, the defendants ALFONSO ADALBERTO PUPO and GEORGE GOVANTES did unlawfully possess with intent to distribute approximately 1.5 pounds of cocaine, a Schedule II narcotic controlled substance, and did aid and abet others in so doing, in violation of the provisions of Title 21, United States Code, Section 841(a)(1), and Title 18, United States Code, Section 2.

**FOURTH COUNT**

That on or about the 13th day of May, 1986, within the Eastern District of North Carolina and elsewhere, the defendants ALFONSO ADALBERTO PUPO and GEORGE GOVANTES did unlawfully distribute approximately 1.5 pounds of cocaine, a Schedule II narcotic controlled substance, and did aid and abet others in so doing, in violation of the provisions of Title 21, United States Code, Section 841(a)(1), and Title 18, United States Code, Section 2.

**2.** 21 U.S.C. § 841(a) states:

Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—

(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance; or

It is well established that an indictment is defective if it fails to allege elements of scienter that are expressly contained in the statute that describes the offense. *Hagner v. United States*, 285 U.S. 427, 52 S.Ct. 417, 76 L.Ed. 861 (1932). "Knowingly or intentionally" is a definite element of the offense charged under 18 U.S.C. § 841(a)(1) (1982). Under similar circumstances, we held in *Finn v. United States*, 256 F.2d 304, 306 (4th Cir.1958), that "[w]here willfulness or knowledge is made an element of the crime, the statutory requirement is not to be ignored. The charge must either include these terms, *or words of similar import*." [3] The words "knowingly or intentionally" themselves "or words of similar import" did not appear in the count attacked, and, therefore, the count was found defective. That case is apposite here.

We refuse to follow the case on which the district court relied in dismissing the objection, *United States v. Arteaga-Limones*, 529 F.2d 1183 (5th Cir.1976), *cert. denied*, 429 U.S. 920, 97 S.Ct. 315, 50 L.Ed. 2d 286 (1976), in which the court held that scienter was adequately charged if the indictment also cited the statute itself. That position is contrary to our own precedents as well as the law in a majority of the circuits. *See Finn, supra.* We have uniformly dismissed on objection before verdict indictments for failure to include an essential statutory element despite the inclusion of a citation to the statute itself in the indictment. *See United States v. Hooker*, 841 F.2d 1225 (4th Cir.1988); *United States v. Hayes*, 775 F.2d 1279, 1282 (4th Cir.1985); *United States v. Pomponio*, 517 F.2d 460, 461 (4th Cir.1975), *cert. denied*, 423 U.S. 1015, 96 S.Ct. 448, 46 L.Ed.2d 386 (1975). We hold that a mere citation to the applicable statute does not give the defendant notice of the nature of the offense. An indictment that must rely on a statutory citation does not "fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished." *See Hamling v. United States*, 418 U.S. 87, 117, 94 S.Ct. 2887, 2907–08, 41 L.Ed.2d 590 (1974). Furthermore, a statutory citation does not ensure that the grand jury has considered and found all essential elements of the offense charged. It therefore fails to satisfy the Fifth Amendment guarantee that no person be held to answer for an infamous crime unless on indictment of a grand jury. *See Hooker, supra.*

As we stated in *Hooker*, when an indictment fails to include an essential element of the offense charged, it thereby fails to charge *any* federal offense and a conviction under the indictment may not stand, provided the omission is timely raised. Such an objection is timely filed at any time prior to verdict. Fed.R.Crim.P. 12(b). In this case, the objection was raised at the conclusion of the government's case and before verdict. The objection in this case was thus timely and should have been sustained. The argument of the government for a liberalization of the rule that the failure of the indictment to include an essential element of the crime would render the indictment in this case valid in this case overlooks that such liberalization is allowable only where the objection is raised after verdict. This is implicit in the language in *Finn v. United States, supra,* 256 F.2d at 307, in which Judge Sobeloff said:

> Indictments and informations are construed more liberally after verdict than before, and every intendment is then indulged in support of the sufficiency.

The contention here was raised before verdict and the liberalization rule is inapplicable. Nor will the fact that the district judge in his jury instructions correctly identified all the elements of the crime charged render the omission in the indictment of such allegation harmless, provided, of course, the objection is raised *before* verdict.

---

(2) to create, distribute, or dispense, or possess with intent to distribute or dispense, a counterfeit substance.

**3.** Italics in text.

We therefore must vacate the convictions on Counts III and IV.

### III.

■ A crucial witness against the defendants was Winford Grainger, an unindicted coconspirator who testified under a court-ordered grant of immunity. Because an immunized witness may have an incentive to falsify his testimony, the court carefully instructed the jury to examine and weigh Grainger's testimony "with greater care and caution than the testimony of ordinary witnesses." The court further warned the jury not to convict any defendant "upon the unsupported testimony of such a witness unless you believe that testimony beyond a reasonable doubt."

The defendants contend that the court erred in giving this instruction rather than the instruction proposed by the defendants. Although the defendants' proposed instruction put greater emphasis on the witness' incentive to falsify his testimony, we cannot say that the instruction given by the court was inaccurate or inadequate. We therefore find no abuse of discretion in the court's refusal to give the particular instruction proposed by the defendants.

### IV.

■ In his closing argument, the prosecutor made statements that allegedly were improper and prejudicial. His statement that *he believed* the evidence proved that the defendants were guilty beyond a reasonable doubt, however, was not an improper suggestion that he had personal knowledge of their guilt. The statement was merely an alternative—albeit less than desirable—form of arguing to the jury that the evidence adduced proved the defendants' guilt beyond a reasonable doubt.

■ The prosecutor closed his argument by urging the jury to "make that statement so that we can address these types of conspiracies that are taking place in our community." This statement is improper because it could suggest to the jury that they should convict the defendants not for their participation in these crimes, but merely to make a statement against narcotics crimes in general or to prevent future crimes. The defendants successfully objected to this argument, but they did not request a curative instruction. Although we believe a curative instruction may have been proper, we cannot say that the court's failure to give such an instruction rises to the level of plain error. Applying the analytical framework set out in *United States v. Harrison*, 716 F.2d 1050, 1052 (4th Cir.1983), *cert. denied*, 466 U.S. 972, 104 S.Ct. 2345, 80 L.Ed.2d 819 (1984), we can see that the improper remarks were isolated and were not deliberately made to divert the jury's attention to extraneous matters. Although the evidence of guilt was not overwhelming, especially as to appellant Govantes, it was adequate. Finally, the degree to which the remarks could have misled and prejudiced the jury was relatively small. Therefore, we find no reversible error in the prosecutor's uncured statements.

### V.

A significant piece of evidence against appellant Pupo was a recording of the telephone conversation between Allen and Pupo on May 13, 1986. The recording was made without a wire intercept order but allegedly with the consent of Allen. At a suppression hearing, Allen testified that he had not made the call voluntarily, but had agreed to the placement and recording of the call only after being beaten by the police and threatened with further physical harm if he did not cooperate. Allen's brother and Allen's girlfriend corroborated the existence of his injuries. Both testified that Allen had told them that he made the call out of fear of reprisal by the law enforcement officers. A medical record also was put into evidence showing Allen's injuries.

Various law enforcement officers testified that the only force they had used against Allen was that necessary to subdue him when he tried to avoid arrest. A physician's assistant who had examined Allen in the hospital testified that Allen did not appear to have been beaten.

The court concluded that Allen had not been beaten nor had he been coerced. Therefore, it found that Allen voluntarily consented to record his conversation with Pupo, and it denied the motion to suppress the recording. Following the jury verdict, but before entry of judgment, the defendants moved for a new trial on the ground of newly discovered evidence regarding Allen's consent. This evidence consisted of an agreement by Allen's attorney to testify that Allen told him, shortly after Allen's arrest, that he had been beaten by law enforcement officers. Furthermore, the lawyer agreed to testify that he had immediately told the Assistant United States Attorney handling the case about the alleged beating.

The court denied the motion for a new trial on the ground that the new evidence was merely cumulative and would not have resulted in a different ruling on the motion to suppress. We agree and find no error in the denial of the motion for a new trial.

For the reasons stated above, the conviction of Govantes on Count I is affirmed. The convictions of Pupo on Count I and V are affirmed, and the convictions on Counts III and IV are vacated. On remand the court is directed to dismiss Counts III and IV without prejudice to the government to reindict and reprosecute Pupo on those counts. *Hayes*, 775 F.2d at 1238.

AFFIRMED IN PART VACATED IN PART and REMANDED.

WILKINS, Circuit Judge, concurring in part and dissenting in part:

I concur in the affirmance of Govantes' conviction and Pupo's convictions on Counts I and V. However, I do not agree that Counts III and IV of the indictment were fatally defective. While not drawn with preferred precision, all counts of the indictment were constitutionally sufficient. And most importantly, even if Counts III and IV are assumed deficient, the deficiency amounted to harmless error and Pupo suffered no prejudice. Therefore, I respectfully dissent from reversal of the convictions on those counts.

## I.

Pupo was charged in Count III with possession of cocaine with intent to distribute and in Count IV with distribution of cocaine, both in violation of 21 U.S.C.A. § 841(a)(1) (West 1981). Section 841(a)(1) provides that unless otherwise authorized, it is unlawful for any person to knowingly or intentionally distribute or possess with intent to distribute, a controlled substance. Although these counts did not recite specifically the words "knowingly or intentionally," they did specifically allege that Pupo acted "in violation of the provisions of Title 21, United States Code, Section 841(a)(1)," in addition to setting forth the circumstances of the alleged offense. The majority holds that omission of the words "knowingly or intentionally" rendered these counts fatally defective. In my view, citation to the applicable statute sufficiently alleged the requisite element of "knowingly or intentionally." In any event, Pupo unquestionably was afforded a fair trial.

## A.

The fifth amendment guarantees that an individual cannot be prosecuted for a capital or infamous offense except on presentment or indictment by a grand jury. Further, the sixth amendment provides that a defendant must be informed of the nature and cause of the accusation against him. These guarantees are reflected in two criteria against which the sufficiency of an indictment must be measured. An indictment must (1) contain the elements of the offense charged and fairly inform a defendant of the charge against him, and (2) enable him to plead double jeopardy in defense of future prosecutions for the same offense. *Hamling v. United States*, 418 U.S. 87, 117, 94 S.Ct. 2887, 2907–08, 41 L.Ed.2d 590 (1974); *Russell v. United States*, 369 U.S. 749, 763–64, 82 S.Ct. 1038, 1046–47, 8 L.Ed.2d 240 (1962). These principles are embodied in Federal Rule of Criminal Procedure 7(c)(1) which requires that: "The indictment ... shall be a plain, concise and definite written statement of

the essential facts constituting the offense charged."

It is generally sufficient for an indictment to allege an offense in the words of the statute, if those words "fully, directly and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense." *United States v. Carll,* 105 U.S. (15 Otto) 611, 612, 26 L.Ed.2d 1135 (1882), *quoted in Russell,* 369 U.S. at 765, 82 S.Ct. at 1047–48. Specifically, an indictment tracking the language of section 841(a)(1) is sufficient. *United States v. Ramos,* 666 F.2d 469, 474 (11th Cir.1982). Further, where intent or knowledge is an element of the crime, the statutory requirement cannot be ignored. *Finn v. United States,* 256 F.2d 304, 306 (4th Cir.1958). The indictment may include the words "knowingly or intentionally" or it may be averred generally in *"words of similar import." Id.* (emphasis in original); *Evans v. United States,* 153 U.S. 584, 594, 14 S.Ct. 934, 938–39, 38 L.Ed. 830 (1894).

In view of these premises, I find no reasonable distinction between recitation of the terminology "knowingly or intentionally," and the specific allegation of violation of section 841(a)(1) which contains those words. A defendant's understanding of the offense is not aided by repetition of this statutory language when the statute allegedly violated is cited in the indictment. Of course, citation to the statute, or even recitation of the statutory language, is not an adequate allegation for every element of an offense, for some elements require greater detail or description of the alleged conduct of a defendant.

#### B.

Traditionally, this court has not taken a formalistic approach when reviewing the sufficiency of indictments which omit essential elements such as knowledge. *United States v. Martell,* 335 F.2d 764 (4th Cir.1964); *Wheatley v. United States,* 159 F.2d 599 (4th Cir.1946); *Center v. United States,* 96 F.2d 127 (4th Cir.1938). Further, prior decisions of this and other circuits support the sufficiency of this indict-

ment based on its statutory citation. *United States v. Duncan,* 598 F.2d 839 (4th Cir.), *cert. denied,* 444 U.S. 871, 100 S.Ct. 148, 62 L.Ed.2d 96 (1979); *United States v. Stefan,* 784 F.2d 1093 (11th Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 193, 93 L.Ed. 2d 125 (1986); *United States v. Arteaga–Limones,* 529 F.2d 1183 (5th Cir.), *cert. denied,* 429 U.S. 920, 97 S.Ct. 315, 50 L.Ed. 2d 286 (1976); *United States v. Johnson,* 414 F.2d 22 (6th Cir.1969), *cert. denied,* 397 U.S. 991, 90 S.Ct. 1112, 25 L.Ed.2d 399 (1970).

This court affirmed a conviction for electronic eavesdropping under 18 U.S.C. § 2511(1)(b)(iv) in *Duncan,* even though the indictment failed to allege that the participants to the intercepted conversations exhibited a justifiable expectation of privacy, an essential element of the offense. 598 F.2d at 848. The court found that use of the term "oral communication" and citation in the indictment of the statute allegedly violated was sufficient to apprise the defendant of the element. *Id.*

In *Stefan,* the Eleventh Circuit affirmed a false statement conviction under 18 U.S.C. § 1001 where the indictment alleged knowledge, but not willfulness. The court held that the defendant could not claim inadequate notice since the indictment specifically referred to the statute. 784 F.2d at 1102.

The Fifth Circuit held that an indictment for importation of marijuana in violation of 21 U.S.C. §§ 960(a)(1) and 952(a) was not fatally defective in failing to include "knowingly or intentionally" in its language. *Arteaga–Limones,* 529 F.2d at 1199–1200. The court found that the indictment adequately informed the defendant of the offense charged by specifying the statutory section numbers allegedly violated and further, that the jury instructions covered the requisite mental element, thereby preventing any injustice to the defendant. *Id.* at 1200. The *Pupo* jury was also properly instructed on the required mental element of knowledge or intent. *See* discussion *infra.*

A perjury conviction under 18 U.S.C. § 1621 was affirmed by the Sixth Circuit in

*Johnson* although the indictment failed to include the word "willfully." The court, in affirming the conviction, stated that "citation of the statute itself served to allege willfulness." 414 F.2d at 26.

### C.

Cases cited by the majority here and in the companion case *United States v. Hooker*, 841 F.2d 1225, are either distinguishable or unpersuasive. For example in *United States v. Hayes*, 775 F.2d 1279 (4th Cir. 1985), the indictment charging a violation of the Travel Act under 18 U.S.C. § 1952(a) was held fatally defective in failing to allege a subsequent overt act in furtherance of the unlawful activity, even though it cited section 1952(a). I agree that *Hayes* was decided correctly and it illustrates the limits of my position. The citation of a statutory code section is not sufficient to allege every element of an offense. As in *Hayes*, a statute which contains elements described in general terms may require greater specificity when set forth in an indictment in order to inform the defendant of the specific offense charged.

This court's decision in *Hale v. United States*, 89 F.2d 578 (4th Cir.1937), is clearly irrelevant since the indictment did not specify the statute allegedly violated. There, the defendant was charged with unregistered retail distribution of opium under former 26 U.S.C. § 1043, which prohibited the purchase or sale of specified drugs "except in the original stamped package or from the original stamped package." The indictment alleged that Hale sold opium derivatives "which were not then and there sold, dispensed and distributed in the original stamped package, contrary to the form of the statute...." *Id.* at 579. But, it omitted an allegation that the sale was not made from the original stamped package, and it did not cite section 1043.

Nor is disposition of the issue here controlled by *United States v. Pomponio*, 517 F.2d 460 (4th Cir.), *cert. denied*, 423 U.S. 1015, 96 S.Ct. 448, 46 L.Ed.2d 386 (1975). This court reversed Pomponio's conviction for interstate transportation of counterfeit securities, 18 U.S.C. § 2314, based on the failure to allege "unlawful or fraudulent intent" in the indictment. Although the indictment cited the statute, the court did not address the issue of whether the citation supplied the missing element, presumably because the argument was not made. *Id.* at 463. Likewise, *United States v. Beard*, 414 F.2d 1014 (3d Cir.1969), and *Robinson v. United States*, 263 F.2d 911 (10th Cir.1959) are inapposite since they do not address the sufficiency of a statutory citation.

The decisions in *United States v. Berlin*, 472 F.2d 1002 (2d Cir.), *cert. denied*, 412 U.S. 949, 93 S.Ct. 3007, 37 L.Ed.2d 1001 (1973), and *United States v. Wabaunsee*, 528 F.2d 1 (7th Cir.1975), are unpersuasive because the logic of their reasoning is taken to an extreme. In *Berlin*, the Second Circuit reversed a conviction for aiding and abetting the submission of false applications to the Federal Housing Authority, 18 U.S.C. §§ 2 and 1010, on an indictment which failed to allege the element of knowledge. The court held that the deficiency was not cured by citation to the statute, stating that "if this were enough to cure a deficient statement, then almost no indictment would be vulnerable to attack." 472 F.2d at 1008. Similarly, the Seventh Circuit in *Wabaunsee* held that citation to the statute did not rectify the failure to allege the element of knowledge in a charge of interstate transportation of stolen property, 18 U.S.C. § 2314. The court expressed the concern that "[c]arried to its logical conclusion, the Government's argument would suggest that *no* essential element of an offense need be alleged in an indictment as long as the statute is cited." 528 F.2d at 4. To the extent that *United States v. McLennan*, 672 F.2d 239 (1st Cir.1982), relies on *Berlin* and *Wabaunsee*, it also is unpersuasive.

My narrow position would give no support for these extreme conclusions. Again, I would not hold that every element of a statutory offense can be supplied by citation to the statute—only those that can be alleged by merely restating the statutory language. For instance, a broad allegation

in the indictment that Pupo violated 21 U.S.C.A. § 841(a)(1) would have been insufficient to charge an offense, for the indictment must specify the time and place of the criminal activity and the controlled substance involved. But, the element "knowingly or intentionally" was sufficiently alleged by citation to the statute without further description, because there can never be a violation of this statute without proof of knowledge or intent.

The court in *United States v. Kurka*, 818 F.2d 1427 (9th Cir.1987), also cited by the majority, dealt with a dispute regarding the correct elements of the statute allegedly violated. The defendant was charged with violation of 18 U.S.C. § 33 under which it is unlawful to "willfully, with intent to endanger the safety of any person on board or anyone who he believes will board, the same, or with reckless disregard for the safety of human life, damages ... any motor vehicle...." The central dispute was whether "willfully" applied to "intent to endanger" or to "damages ... any motor vehicle." The Ninth Circuit held that "willful" damage to motor vehicles is an essential element of the crime under section 33, and that the indictment was defective in failing to allege "willful" damage to the vehicle despite citation to the statute. *Id.* at 1428. Unlike here, the very meaning of section 33 was at issue and an erroneous interpretation of the statute persisted throughout the trial and in the instructions to the jury. *Id.* at 1431.

The issue in *United States v. Jones*, 647 F.2d 696 (6th Cir.), *cert. denied*, 454 U.S. 898, 102 S.Ct. 399, 70 L.Ed.2d 214 (1981), was not the sufficiency of the indictment, but the difference between the offense proven at trial and the offense charged in the indictment. The defendants were charged with conspiracy "to make and construct" unregistered destructive devices, "in violation of Chapter 53, Title 26, Sections 5861(d) and 5861(f), United States Code." *Id.* at 698 n. 1. The government failed to present any proof that the defendants made or constructed a destructive device. The district court instructed the jury to disregard the language of the indictment and then instructed that they could convict the defendants if the jury found that the defendants conspired to *possess* a destructive device. *Id.* at 699. The Sixth Circuit correctly reversed, holding that the defendants were not on notice of the conspiracy to possess charge since the indictment expressly limited the charge to a single violation of the "to make or construct" portion of the statute. This decision clearly lends no support for the position taken by the majority.

## II.

In holding that Counts III and IV of the indictment were fatally defective, the majority emphasizes form while ignoring substance. Even if the counts were technically insufficient, the convictions should be affirmed due to a total lack of prejudice to the defendant. By every assessment Pupo was afforded a fair trial.

Counsel for Pupo concedes that he was fully aware of the charges against his client. He does not assert that his defense was hindered by the absence of express allegations of knowledge or intent. Nor is there any contention that Pupo would have been unable to plead double jeopardy as a defense in any future prosecutions for the same offenses.

The majority holds that proper instructions to the petit jury and the resulting guilty verdicts cannot satisfy the fifth amendment right to be tried upon charges found by a grand jury. But, the extreme sanction of dismissal of counts in an indictment should be appropriate only where the defendant can show prejudice. *United States v. Talbot*, 825 F.2d 991 (6th Cir. 1987) (citing *United States v. Mechanik*, 475 U.S. 66, 106 S.Ct. 938, 89 L.Ed.2d 50 (1986)). All agree that the wording of Counts III and IV had absolutely no effect on the outcome of the trial. The guilty verdicts returned by the petit jury demonstrate that there was probable cause to charge Pupo with the offenses of which he was convicted, and "any error in the grand jury proceeding connected with the charging decision was harmless beyond a reasonable doubt." *Mechanik*, 475 U.S. at 70, 106 S.Ct. at 942.

In *Mechanik*, two witnesses testified in tandem before a grand jury in violation of

Federal Rule of Criminal Procedure 6(d) which provides that only one witness may appear before a grand jury at one time. This court reversed the convictions as "tainted" by the violation, finding that no showing of prejudice was required. *United States v. Mechanik,* 756 F.2d 994 (4th Cir.1985) (en banc). The Supreme Court reversed this court and held that the convictions must stand, stating that "the supervening jury verdict made reversal of the conviction[s] and dismissal of the indictment inappropriate." 475 U.S. at 70, 106 S.Ct. at 941.

Although the Supreme Court held that Rule 6(d) protects a defendant's right to a grand jury determination of probable cause, it rejected this court's view that violation of the rule required automatic reversal of the conviction regardless of the lack of prejudice. Rather, the Court applied the harmless error rule of Federal Rule of Criminal Procedure 52(a) which provides that "[a]ny error, defect, irregularity or variance which does not affect substantial rights shall be disregarded." The Court discussed the social costs of reversal of a conviction and the defendant's right to a fair determination of guilt or innocence, concluding that the balance tips against reversal when the error has no effect on the outcome of the trial. *Id.* at 72, 106 S.Ct. at 942–43. Applying Rule 52(a), the Court found that the petit jury's verdict rendered any error in the grand jury proceeding harmless beyond a reasonable doubt. *Id.* at 70, 106 S.Ct. at 941–42.

Under *Mechanik,* it is clear that a harmless error analysis should be applied to any violation of Pupo's right to a grand jury determination of probable cause. Clearly there was no prejudice, for the petit jury was properly instructed on all elements of the charged offenses, including the requirement that before the jury could return verdicts of guilty, it must find beyond a reasonable doubt that Pupo acted with knowledge or intent. And, there is no claim by Pupo of insufficient evidence as to any element. As in *Mechanik,* the petit jury's verdicts "rendered harmless any conceivable error in the charging decision" that might have flowed from the language of the indictment. *Id.* at 73, 106 S.Ct. at 943.

Certainly, it is preferable for an indictment to specify in detail each essential element, including recitation of boiler plate language taken from the applicable statute. But, in the instances where the preferred approach is not followed, reversal should not be automatically mandated in the total absence of any prejudice to a defendant whom all concede was afforded a fair trial.

Circuit Judges K.K. HALL, CHAPMAN and WILKINSON have asked to be shown as joining in this separate opinion.